## GOULD *v.* GERKIN.

(Decided December 19, 1927.)

*Messrs. Tyler, McMahon, Smith & Wilson,* and *Mr. P. R. Taylor,* for plaintiff in error.

*Messrs. Fraser, Hiett, Wall & Effler,* for defendant in error.

RICHARDS, J. The original case was commenced by John D. Gerken to recover damages growing out of a contract of sale of all the corporate stock of the Marshall-Gerken Company. The trial resulted in a judgment in favor of the plaintiff for $11,856.65, and this proceeding is brought to secure a reversal of that judgment. A jury was impaneled and substantially all of the evidence adduced in the presence of the jury, but, ultimately, by agreement of parties, a jury was waived and the case submitted to the judge to determine the facts and the law, although the action was one at law and not in equity.

The principal business of the company was the manufacture of a binding post, which is a device used in radio sets. Substantially all of the capital stock of the Marshall-Gerken Company was owned by John D. Gerken, Herman C. Kuebler, H. C. Kuebler, Jr., and Theodore R. Gerken, and they entered into a contract with Harry M. Gould, plaintiff in error, which bears date of January —, 1925, for the sale to him of all the stock of that company. The material parts of that contract are as follows:

"In consideration of this agreement and the delivery of said stock within the time hereinbefore mentioned, said Harry M. Gould agrees to and hereby does assume the liabilities and indebtedness of said company and agrees to save said stockholders harmless upon the same. Said total liabilities and outstanding indebtedness having been represented to said Harry M. Gould to be not in excess of twenty-one thousand dollars ($21,000.00), payable in the

nature of bank loans and accounts payable in the amount of five thousand seven hundred thirty-eight dollars and twenty-eight cents ($5,738.28).

"As an inducement in the purchase of this stock, it has been warranted by the undersigned stockholders that the assets of said company are as follows: Inventory (local) $2,600.00, inventory (Scranton) $6,614.25, accounts receivable $11,939.74, cash $986.47, as of January 27, 1925.

"In consideration of the foregoing agreement on the part of said Harry M. Gould, the undersigned stockholders further warrant and guarantee the payment to said company of all of the accounts receivable, in the amount of eleven thousand nine hundred thirty-nine dollars and seventy-four cents ($11,939.74), above mentioned, hereby representing and warranting that all of the said accounts are *bona fide* accounts receivable and that the debtors are solvent and of good credit rating."

The parties all understood that the $21,000 of indebtedness of the Marshall-Gerken Company was owing to the Ohio Savings Bank & Trust Company and that Herman C. Kuebler and John D. Gerken were liable upon the notes representing that indebtedness. It was desired by all the parties that this indebtedness to the bank should be extended from time to time, but the bank was unwilling to accept Gould as its debtor. In order, therefore, to effectuate an arrangement for extending the indebtedness from time to time, a contract was made by which Herman C. Kuebler and John D. Gerken guaranteed to the bank the indebtedness and such renewals of the notes representing the indebtedness as might thereafter be made. That contract of guaranty

bears the date of February 19, 1925, but was manifestly executed on the same day that the contract of sale of the corporate stock was signed.

Upon the execution of the contract the stock of the Marshall-Gerken Company was delivered to Gould, and thereupon he took possession of the assets of the Marshall-Gerken Company and conducted the business, paying from the assets various sums upon the indebtedness to the bank until April 12, 1926, at which time the indebtedness was reduced to $16,292.08. On that date Herman C. Kuebler and John D. Gerken, guarantors on the indebtedness to the bank, paid the same by executing their own individual notes to the bank, whereupon the bank canceled and surrendered the notes of the Marshall-Gerken Company, which it had held. Claim is made that this did not constitute a payment of the obligations which the bank had held against the company, but we have no difficulty in reaching the conclusion that the transaction amounted to a payment of that indebtedness.

On June 3, 1926, Herman C. Kuebler assigned to John D. Gerken all his claim against Harry M. Gould arising out of the transactions, and on July 1, 1926, this action was brought by Gerken to recover the amount which he and Kuebler had been compelled to pay the bank.

The amended answer set up numerous defenses. Among these was a claim of misrepresentation in the execution of the contract, resulting in the claimed rescission thereof by Gould. The averment of the amended answer in that respect is that the "four stockholders represented to defendant that said binding post was not a patentable device and that

the Marshall-Gerken Company was, and would continue to be, free to manufacture the same without actual or apparent infringement upon any other patent, and relying wholly upon these representations, defendant entered into said contract."

The bill of exceptions discloses that, when negotiations were pending for the sale, inquiry was made by Gould of Theodore Gerken in regard to the existence of a patent for the binding post which the company was manufacturing, and that Gerken showed Gould the correspondence which had passed between the company and Messrs. Owen & Owen, patent attorneys, relating to the binding post, and this correspondence disclosed that the device was not patentable, at which time Gerken stated to Gould it was not a patentable device. Gould on this occasion evidently learned from this correspondence as much about the patentability of the device as Gerken knew. It is true that the right to a patent depends on the existence of certain facts and the application of the patent law to those facts. But a statement that a given device is or is not patentable must be a matter of opinion, and the falsity of such representations would not afford ground for avoiding a contract. *Dillman* v. *Nadlehoffer,* 119 Ill., 567, 7 N. E., 88; *Rawson* v. *Harger,* 48 Iowa, 269; *Reeves* v. *Corning,* (C. C.), 51 F., 774.

So far as the representation that the purchaser was free to manufacture the device was concerned, that statement was apparently true at the time it was made, but the portion of the representation that the purchaser would continue to be free to manufacture the device was necessarily a representation as

to future events, and, even if false, would not lay the foundation for an action for misrepresentation.

There is another aspect to this branch of the case. A few months after the execution of the contract Gould received notice from Philadelphia that a patent had been issued to one Hugh H. Eby on a certain ''improvement in binding posts,'' and was threatened with litigation unless the manufacture of the Marshall-Gerken binding posts was stopped. Gould sent Theodore Gerken to Philadelphia and he negotiated with the holder of the patent and his attorney, but these negotiations were ineffective, whereupon the stock of goods of the Marshall-Gerken Company was sold to Eby, and Gould gave notice of his rescission of the contract by which he had purchased the stock of the company. The patent which was issued by the government to Eby is in evidence and is for an improvement in binding posts, but it does not appear as a matter of fact that the continued manufacture of the Marshall-Gerken binding posts would be an infringement, actual or apparent, of the patent issued to Eby, and, so far as the record shows, it has never been judicially determined that such infringement existed. Certainly a representation that the Marshall-Gerken device was not patentable is not disproved by proof of the issuance of a patent to a third person for an improvement in binding posts.

We find no error of the trial court in reaching a conclusion that the claimed fraudulent representations were not of such character as to entitle the defendant to relief. We have examined all the other asserted errors relied upon by the plaintiff in error and find none to his prejudice.

The defendant in error has filed a cross-petition in error based on the contention that the amount of the judgment rendered in his favor should have been larger than was found by the trial court. This contention is founded on the claim that the court erred in deducting the sum of $4,435.43 from the claim of plaintiff below, which amount the cross-petitioner insists should have been included in the judgment in his favor, and he insists "that this court render final judgment in his favor for the full amount to which he is entitled under the law and the evidence in the case." The amended answer sets up a claimed breach of warranty by the sellers that the accounts receivable of the Marshall-Gerken Company amounted to $11,939.74, and were *bona fide* accounts, and the debtors solvent and of a good rating. The sellers by their written contract made with Gould guaranteed the payment to the Marshall-Gerken Company of these accounts receivable. There is a well-recognized distinction between the guaranty of payment of indebtedness and the guaranty of collectibility of the same. The guaranty of payment of an account is broken, and a cause of action arises for the breach, if the account is not paid within a reasonable time after it becomes due and payable.

It appears from the evidence that of these accounts only $7,402.24 have actually been paid, and the defendant below claimed as damages the difference between the amount guaranteed to be due on the accounts receivable and the amount which has actually been paid. It is the difference between these sums that the defendant in error contends should be added to the amount of the judgment in his favor. He insists that the amount was not a

proper set-off to the defendant below for the reason that the accounts were payable to the Marshall-Gerken Company and not to Gould. The judgment which was rendered in the trial court does not allow this or any other amount as a set-off, but simply finds and adjudges ''that plaintiff is entitled to recover from defendant the sum of $11,856.65, with interest thereon from April 12, 1926.'' The plaintiff in error contends that any deduction which was made in the trial court from the amount claimed by the plaintiff in that court was properly made for the reason that Gould owned all the stock in the Marshall-Gerken Company, and was thus, in reality, the owner of the claims, and that the doctrine that a corporation and its stockholders are separate entities is a mere fiction of law. We do not find it necessary to determine this contention between the parties for the reason that the defendant in error, both in his cross-petition and brief, disavows any claim that the judgment should be reversed, and the cause remanded for a new trial, and only claims that it should be reversed in so far as it awards him less than the amount claimed in the trial court, and that the judgment in his favor should be increased by this court in the sum of $4,435.43. We know of no authority which would authorize this court to increase the amount awarded in the court of common pleas, even if it found the trial court should have rendered a larger judgment. *American Ry. Express Co.* v. *Bender,* 20 Ohio App., 436, 152 N. E., 197.

For the reasons given, the judgment rendered in the court of common pleas will be affirmed.

*Judgment affirmed.*

LLOYD, J., concurs.

WILLIAMS, J., concurring. The writer is in accord with the views expressed in the foregoing opinion with the exception that he believes that a final judgment should be entered in favor of the defendant in error for the amount paid by the defendant in error and Kuebler to the Ohio Savings Bank & Trust Company in satisfaction of the latter's claim against the Marshall-Gerken Company, for which amount the plaintiff in error had bound himself by contract. The cause of action upon which the so-called set-off was based ran in favor of the Marshall-Gerken Company, a corporation, and not in favor of Gould, and Gould was not entitled to have the claim against him reduced by deducting the amount of the alleged set-off. The case of *American Ry. Express Co.* v. *Bender, supra,* has no application to a state of facts such as is presented in the instant case. The power of this court to enter judgment for the full amount due the plaintiffs, without any deduction for the set-off, becomes doubly apparent when we keep in mind that there is no good reason which can be given why the court below should not have entered judgment in favor of the plaintiff for the full amount claimed, as a matter of law.