Theodore J. MAYER, Plaintiff-Appellant,

v.

Frank PETZELT, Defendant-Appellee.

No. 13611.

United States Court of Appeals
Seventh Circuit.

Dec. 28, 1962.

Rehearing Denied Jan. 30, 1963.

William C. Wines, Chicago, Ill., for appellant.

L. H. Vogel, Albert F. Manion, Chicago, Ill., Charles R. Purcell, Jr., Chicago, Ill., John D. Dempsey, Chicago, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This is an appeal by plaintiff following the second trial of a diversity personal injury action against a Crystal Lake, Illinois, policeman. The first trial resulted in a $25,000 verdict for plaintiff, but a new trial was granted defendant. At the second trial on liability alone, the jury returned a general verdict for plaintiff with a special interrogatory against him on the question of due care. The District Court, notwithstanding the verdict for plaintiff, entered judgment[1] for defendant.

While driving at night in Crystal Lake, plaintiff violated a traffic law. He then drove into a dark alley behind his hotel, and defendant followed on his police department motorcycle. While defendant was attempting to arrest plaintiff, the latter ran, fell in the alley, and was injured.

The vital issue is whether the alleged negligence of the defendant Crystal Lake policeman is actionable in Illinois.

We think the defendant, under Illinois law, can be held liable. And the District Court, sitting as "only another" Illinois court, Allstate Insurance Co. v. Charneski, 286 F.2d 238, 244 (7th Cir. 1960) in this diversity case, erred if it

1. Rule 50(b), FEDERAL RULES OF CIVIL PROCEDURE.

rested its decision upon the ground that defendant's negligence was not actionable.

Illinois courts hold individual policemen liable for wrongs committed in performance of their official duty.[2]  Hood v. Brinson, 30 Ill.App.2d 498, 175 N.E.2d 300 (1961), La Cerra v. Woodrich, 321 Ill.App. 107, 52 N.E.2d 461 (1943), Styblo v. McNeil, 317 Ill.App. 316, 45 N.E.2d 1011 (1943), Wisher v. City of Centralia, 273 Ill.App. 168, 176–77 (1933), City of Chicago v. Williams, 182 Ill. 135, 137, 55 N.E. 123, 124 (1899), President and Board of Trustees of Town of Odell v. Schroeder, 58 Ill. 353, 355 (1871). In 1955 the rule was specifically recognized by the Illinois Supreme Court[3] in Gaca v. City of Chicago, 411 Ill. 146, 155, 103 N.E.2d 617, 623 (1952), and is expressed in Judge Schaefer's dissent in that case.[4]

An exception to the rule was announced, without authority, in Taylor v. City of Berwyn, 372 Ill. 124, 22 N.E.2d 930 (1939), on which defendant mainly relies.  However, subsequent legislation and the cases cited show that Taylor is not the law of Illinois.[5]  Moreover, since 1945, the Illinois General Assembly has consistently presupposed the general tort liability of policemen, in providing that certain municipalities must indemnify policemen for tort judgments rendered against them.[6]

The District Court erred also if it found that the evidence failed to establish liability.

The most favorable view of the evidence[7] for plaintiff is:  On the night of his injury, plaintiff had illegally crossed the center line in making a wide right turn.  Afterward he drove into the dark alley behind his hotel, parked and turned out the car lights.  He then recognized, standing by his car, defendant, who had, about a month before, pursued plaintiff for "telling a lie," caught him and dragged him back to the police station ripping his shirt off in the process.[8]  Defendant, then a man of 27 who weighed 190 pounds, said to plaintiff, a man of 64, "You —— — – ——, now I got you where I want you, and you come out of that car and you are going to get it."  Defendant did not have his flashlight or ticket book with him at the time.  While "hollering" and shaking plaintiff's car, defendant tried to open the locked doors.  When defendant went to the right side, plaintiff got out the left, ran down the

---

2. See 8 ILLINOIS LAW & PRACTICE, Cities, Villages, etc. § 377, pp. 683–685.

3. "It [the statute requiring municipalities to indemnify policemen for tort judgments rendered against them] does not change the general tort liability of a policeman." 411 Ill. 146, at 155; 103 N.E.2d 617, at 623.

4. "The policeman, however, has been individually liable for his tort, notwithstanding he commits it while engaged in the performance of a governmental function." 411 Ill. 146, at 159; 103 N.E.2d 617, at 625.

5. In 1943, the Illinois General Assembly enacted § 1–15 of the Cities & Villages Act, Chapter 24, ILLINOIS REVISED STATUTES. That Act, applicable in effect only to Chicago, by rendering the municipality "only" liable, implicitly excluded policemen from liability for negligence in driving motor vehicles in performance of their duties. By inference, it gave statutory force to the rule expressed in Taylor. In 1945, however, the legislature amended § 1–15 by cutting out the qualification municipality "only" and provided that municipalities of over 500,000 population should indemnify policemen for any judgment rendered against him as a result of injury inflicted in performance of duty, excepting wilful misconduct. In 1957, the General Assembly broadened the indemnification statute, by the addition of a section, to cover all municipalities.

6. 1961 ILLINOIS REVISED STATUTES, Chapter 24, §§ 1–4–5, 1–4–6.

7. 5 MOORE, FEDERAL PRACTICE, 2346–47 (2d ed. 1951).

8. The evidence of the prior incident was excluded at the trial. We think the ruling was erroneous because it has a bearing on plaintiff's mental state on the night of June 23. Smith v. Cornell, 59 Ill. 66 (1871), Jennings v. Murphy, 194 F.2d 35, 37 (7th Cir. 1952), 2 JONES, EVIDENCE, 1149 (2d ed. 1926), 18 ILLINOIS LAW & PRACTICE, Evidence, § 61, pp. 193–194.

No

alley and was injured. Defendant later told a fellow officer that he " * * * must have scared hell out of him because he started to run from me."

We think the jury could on this evidence draw a reasonable inference that defendant should have foreseen, as a reasonably prudent man, that his conduct on the night in question, in view of the incident the previous month, would probably cause plaintiff, in fear for his safety, to leave the automobile, run away in the dark alley and be injured while running. This inference would support the finding of negligence. Karas v. Snell, 11 Ill.2d 233, 142 N.E.2d 46, 56 (1957), Hood v. Brinson, 30 Ill.App.2d 498, 175 N.E.2d 300 (1961).

We need not refer to the cases cited by defendant with respect to liability for negligence causing mental suffering unaccompanied by physical injury. The recovery at bar was not sought for plaintiff's fear, but for a broken leg. And Braun v. Cravin, 175 Ill. 401, 420, 51 N. E. 657, 661–662, 42 L.R.A. 199 (1898) has no force after Knierim v. Izzo, 22 Ill.2d 73, 174 N.E.2d 157 (1961). In our opinion, an Illinois court would decide, as we do, that the jury could reasonably conclude that defendant's negligence was the proximate cause of plaintiff's injury and that defendant is liable. Elgin, A. & S. Traction Co. v. Wilson, 217 Ill. 47, 55, 75 N.E. 436, 439 (1905), Brownback v. Frailey, 78 Ill.App. 262 (1898).[9]

Implicit in the general verdict for plaintiff is a finding of absence of contributory negligence. Theurer v. Holland Furnace Co., 124 F.2d 494, 497 (10th Cir. 1941). But a special interrogatory answered in the negative the question: "Did the plaintiff use ordinary care and caution for his own safety on the occasion in question?" This interrogatory is not inconsistent with the general verdict because, even though the jury might believe plaintiff was guilty of lack of due care, it might also believe that plaintiff's actions were not the proximate cause of his injury.[10] Furthermore, the District Court would not be justified in deciding that plaintiff's conduct proximately caused the injury, and entering judgment on the interrogatory. The jury had a right to consider the circumstances under which plaintiff acted, and could find that he fled in fear with no free opportunity to choose his precise path of escape. Hackett v. Chicago Indianapolis & Louisville Railway, 170 Ill.App. 140, 148 (1912), affirmed, 228 U.S. 559, 33 S.Ct. 581, 57 L.Ed. 966 (1913).[11]

We hold that the District Court erred in entering judgment notwithstanding the verdict. Plaintiff seeks reversal of the order which granted a second trial. We have considered the order, but we are not disposed, on the grounds asserted, to speculate upon the propriety of the District Court's exercise of discretion. For the reasons given, the judgment is reversed, and the cause is remanded for trial upon the issue of damages only.

9. See, in general, 15 ILLINOIS LAW & PRACTICE, Damages § 76, p. 489, PROSSER, TORTS 178-80 (1955 ed.), 29 CHICAGO-KENT LAW REVIEW 189 (1951), 48 NORTHWESTERN U. LAW REVIEW 377 (1954).

10. "It is plain that the general verdict must yield when it is so clearly at variance with one or more of the [special interrogatory] answers that the two are irreconcilable in a legal sense. But every reasonable intendment in favor of the general verdict should be indulged in an effort to harmonize the two. The answers override the general verdict and warrant the entry of judgment in disregard of the latter only where the conflict on a material question is beyond reconciliation on any reasonable theory consistent with the evidence and its fair inferences." Theurer v. Holland Furnace Co., 124 F.2d 494, 498 (10th Cir. 1941).

11. "A person confronted with a sudden or imminent peril is not required by law to do any particular thing, or to omit to do any particular thing, for his own safety. An act done under such circumstances may not constitute contributory negligence * * *." 28 ILLINOIS LAW & PRACTICE, Negligence § 128, p. 123.